```
                   UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF VERMONT
                                      :
UNITED STATES OF AMERICA              :
                                      :
     v.                               :     No. 2:04-CR-135
                                      :
DAVID S. CHASE, MD,                   :
     Defendant.                       :
                                      :
```

## OPINION AND ORDER

In an order dated November 21, 2005, the Court granted in part the Defendant's motion for a judgment of acquittal. The government now moves for reconsideration of that decision. For the reasons stated below, the government's motion is DENIED.

## I. BACKGROUND

The relevant facts and procedural history are summarized in the Court's Opinion and Order of November 21, 2005 (Doc. 139). Briefly stated, the Indictment alleges that the Defendant, David S. Chase, MD, violated 18 U.S.C. §§ 1035 and 1347 by engaging in a scheme to defraud several health care benefit programs ("benefit programs"). It alleges that Dr. Chase recorded false statements in patient medical charts and that he recommended, and in some cases, performed, cataract surgery that was not medically necessary. As of the close of the government's case in chief, the Indictment contained 71 substantive counts. Of those, 25 counts (the "surgical counts") related to patients who had

actually undergone allegedly unnecessary surgery and on whose behalf bills had been submitted to benefit programs.  The remaining 46 counts (the "non-surgical counts") related to patients who had not undergone surgery.

In the November 21 Order, the Court granted Dr. Chase's motion for a judgment of acquittal with respect to the non-surgical counts and denied it as to the surgical counts.  The Court held that acquittal was warranted on all of the non-surgical counts because the government had failed to establish materiality, which is an element of the charged offenses.  It also held that acquittal was warranted on the Section 1347 non-surgical counts because the government had not presented evidence of conduct that rose to the level of an attempted or actual execution of a fraudulent scheme.  The government now requests that the Court reconsider its decision.

## II. DISCUSSION

The Federal Rules of Criminal Procedure do not expressly provide for reconsideration motions in criminal cases, and the standard to be applied in deciding such motions "has not been clearly established."  United States v. Leaver, 358 F. Supp. 2d 273, 277 n.14 (S.D.N.Y. 2005).  Given the lack of a controlling standard in this District, this Court will follow the lead of courts in the Southern District of New York.  Those courts apply the standard set forth in that district's Local Rule 6.3, which

provides that a motion for reconsideration is appropriate "where a court overlooks controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court."  Id.  "A motion for reconsideration may not present new facts, issues or arguments not previously presented to the court."  Id.  As discussed below, the government has failed to meet this standard.  Even more fundamentally, however, the Court is barred from reconsidering its prior decision by the constitutional doctrine of double jeopardy.

**A. The Double Jeopardy Clause precludes reconsideration of the Court's judgment of acquittal**

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  This provision "prohibits reexamination of a court-decreed acquittal to the same extent it prohibits reexamination of an acquittal by jury verdict."  Smith v. Massachusetts, 125 S. Ct. 1129, 1133 (2005).  Under the Supreme Court's holding in Smith, this Court is precluded from reconsidering its judgment of acquittal on the non-surgical counts.

In Smith, the state trial court had orally issued the equivalent of a judgment of acquittal at the close of the government's evidence on one of three charged counts.  After the defense presented a single witness and rested its case, the

government brought certain case law to the court's attention. The court then announced that it was "reversing" its prior ruling and reinstated the dismissed count. The jury subsequently returned a verdict of guilty on that count. The Supreme Court vacated the conviction, holding that the Double Jeopardy Clause barred reconsideration of the acquittal:

> If, after a facially unqualified midtrial dismissal of one count, the trial has proceeded to the defendant's introduction of evidence, the acquittal must be treated as final, unless the availability of reconsideration has been plainly established by pre-existing rule or case authority expressly applicable to midtrial rulings on the sufficiency of the evidence.

125 S. Ct. at 1137; see also United States v. Blount, 34 F.3d 865, 868 (9th Cir. 1994) (holding that reconsideration was barred by double jeopardy where there was "no suggestion" that the trial court's grant of a motion for acquittal "was tentative or subject to reconsideration").

This case is directly controlled by Smith. In issuing the Order, the Court gave no indication that its dismissal of the non-surgical counts was qualified or subject to reconsideration. Nor is there case law supporting the notion that reconsideration of a Rule 29(a) decision is permissible in the circumstances presented here. The government notes that reconsideration was permitted in United States v. Washington, 48 F.3d 73 (2d Cir. 1995) and United States v. Byrne, 203 F.3d 671 (9th Cir. 2000). Even assuming that these cases survive Smith, however, they

4

establish merely that an oral grant of acquittal may be subject to reconsideration prior to entry of judgment.  The government has not brought to the Court's attention any case in which reconsideration was permitted once the trial court had committed its order to writing and entered a judgment of acquittal.

   The government attempts to distinguish <u>Smith</u> by arguing that because it announced its intention to file a motion for reconsideration immediately after issuance of the Order, Dr. Chase cannot have detrimentally relied on the Court's judgment of acquittal in proceeding with his defense.  <u>Smith</u> holds, however, that the defendant need only suffer a "possibility of prejudice," not actual prejudice.  <u>Smith</u>, 125 S. Ct. at 1136; <u>see also</u> <u>id.</u> at 1137 n.7 (indicating that "requiring someone to defend against a charge of which he has already been acquitted is prejudice <u>per se</u> for purposes of the Double Jeopardy Clause").  Because this Court declined to reserve decision and gave the government no indication that it would reconsider the Order, Dr. Chase's strategy may have changed in reliance on the Order.  Just as in Smith, the possibility of prejudice arose as soon as Dr. Chase continued with the presentation of his case.  Accordingly, the Court cannot now reconsider its order without violating Dr. Chase's rights under the Double Jeopardy Clause.

## B. Dr. Chase was entitled to a judgment of acquittal on the non-surgical counts

For the reasons stated above, the double jeopardy doctrine bars the Court from reconsidering its decision to grant Dr. Chase's motion for acquittal. Even if the Court were permitted to change its decision, however, it would not do so, because the government has not brought to its attention "controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." Leaver, 358 F. Supp. 2d at 277 n.14. Instead of viewing the case as a coherent whole, the government argues for reconsideration based upon a selective reading of the Order as well as the Indictment. As discussed below, this Court declines the invitation to focus on individual out-of-context statements and passages while overlooking the big picture.

1. The evidence was insufficient to establish attempts under 18 U.S.C. § 1347

The Court dismissed the non-surgical Section 1347 counts in part because of its conclusion that the government failed to present sufficient evidence that Dr. Chase engaged in activity that qualified as an attempted execution of a fraudulent scheme. The government asserts that the Court failed to take into account all of the evidence that an attempt occurred. In particular, it argues, the Court limited its consideration to the false

statements in patient charts and did not consider evidence that Dr. Chase offered and recommended surgery, often using persuasive language or a raised voice, in conversations with patients.

The government selectively quotes from certain passages in which the Court referred to the fact that false statements alone cannot have constituted "substantial steps" under traditional attempt law.  Contrary to the government's assertion, however, the Court also explicitly discussed the government's reliance on evidence of Dr. Chase's recommendations.  For example, the Court began its discussion of the attempt issue as follows:

> While conceding that Dr. Chase did not actually execute a scheme to defraud with respect to the non-surgical patients, the government argues that he attempted to execute such a scheme by recording false statements in the non-surgical patients' charts *and recommending that they undergo surgery that was not medically necessary*.

Order at 23 (emphasis added).  The Court went on to reject the notion that recommending surgery was anything but a preliminary step in a lengthy process.

> In fact, the evidence demonstrated that *following Dr. Chase's recommendation of surgery*, each patient would undergo a lengthy informed consent procedure with a nurse who would explain in detail the benefits and risks of the surgery.  The patient would then take additional documents home and consider the matter before making a decision to go forward.  The frequency with which patients refused to undergo surgery *underscores the preliminary nature of Dr. Chase's recommendations*.

Id. at 25.  As the quoted language indicates, the government's assertion that the Court failed to consider evidence that Dr. Chase offered and recommended unnecessary surgery is unfounded.

7

The government also argues that the Court overstated the number of steps that Dr. Chase customarily took between recommending surgery and receiving insurance reimbursement.  The government notes that several of the steps, such as submission of claims, were taken not by Dr. Chase personally, but by his staff.  This argument is not persuasive.  Dr. Chase directed the actions of his staff, and he was legally responsible for their actions.  Indeed, the Indictment alleges that Dr. Chase "submitted and *caused to be submitted*" reimbursement claims.  Indictment ¶ 15 (emphasis added).  While certain steps in the reimbursement process may not have been completed by Dr. Chase personally, he was certainly aware that those steps were being taken on his behalf, and the evidence makes clear that he had numerous opportunities to abort the process after recommending or even performing surgery.  For this reason, the Court remains of the view that the government has presented insufficient evidence of attempt under Section 1347.[1]

2. The theories of materiality on which the government now relies were not properly alleged in the Indictment

In the Order, the Court held that because Dr. Chase never submitted reimbursement claims on behalf of the non-surgical

---

[1] The Court expresses no view as to which additional steps Dr. Chase would have to have taken in order for his actions to have constituted an attempt.  The Court's holding in the Order, to which it adheres today, was that the mere recording of statements and recommending of surgery did not rise to the requisite level.

8

patients, the statements in those patients' charts could not be considered material to the benefit programs that insured those patients.  The Court went on to reject the government's suggestion that materiality could be established for the Section 1035 counts by considering the impact of the statements on other entities, such as individuals within Dr. Chase's practice or other doctors.  The Court concluded that this theory of materiality was not contained in the Indictment, and that permitting a jury to take it into account would constitute an improper constructive amendment of the Indictment.  The government takes issue with this conclusion.

The importance of ensuring that an indictment gives the defendant adequate notice of the charges against him cannot be understated.  It implicates basic notions of due process and fairness, as well as several specific provisions of the Fifth and Sixth Amendments.  See United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999) (holding that the specificity requirement "fulfills the Sixth Amendment right 'to be informed of the nature and cause of the accusation;' . . . prevents a person from being subject to double jeopardy as required by the Fifth Amendment; and . . . serves the Fifth Amendment protection against prosecution for crimes based on evidence not presented to the grand jury.").  The constructive amendment doctrine, in turn, acts as a corollary to this rule by prohibiting the government

from changing its approach midstream to rely on theories or evidence of which the indictment contained insufficient notice. As the Second Circuit stated in a recent case based on analogous provisions of New York law:

> A defendant is entitled to fair notice of the charges against him.  If the indictment alleges specific facts and theories to support those charges, the defendant should not be placed in the precarious position of mounting a challenge to those facts, only to face contradictory facts when the state changes theories.  Such a reversal by the prosecution may unfairly lead the accused to defend on too many fronts without adequate notice, to contradict himself, or to appear inconsistent.

LanFranco v. Murray, 313 F.3d 112, 119 (2d Cir. 2002).

With these principles in mind, the Court considers the government's proposed theories of materiality.  The government argues that its theories do not constitute constructive amendment or otherwise violate Dr. Chase's due process rights.  As with the arguments that the Court considered and rejected in the Order, however, the government once again relies upon a selective reading of the Indictment that is not viable when considered in the context of the entire document.  Courts have repeatedly held that an indictment is to be considered as a whole, not by parsing individual phrases or counts.  See, e.g., Walsh, 194 F.3d at 45 (rejecting the defendant's argument as "unavailing when the Indictment as a whole is examined"); United States v. Lavergne, 805 F.2d 517, 521 (5th Cir. 1986) (evaluating the indictment as a whole).

The government first suggests that the Indictment gave notice that it would seek to prove materiality by demonstrating that the statements were material to Dr. Chase himself.  It notes that the Indictment alleges that Dr. Chase's own practice qualified as a health care benefit program and that he made false statements "in connection with the delivery of . . . health care . . . services."

While the government is correct that the Indictment contains the cited language, the Court remains unpersuaded that the Indictment gave sufficient notice that materiality would be proven in such a manner.  Materiality cannot be established without reference to a particular decisionmaking process.  See Neder v. United States, 527 U.S. 1, 16 (1999)(holding that a matter is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed").  Accordingly, to allege the element of materiality properly, the Indictment must give some indication of which decisions the alleged false statements were capable of influencing.

In this case, the Indictment makes clear that the government's concern was with the reimbursement decisions of benefit programs.  See, e.g., Indictment ¶¶ 17-18 (stating that various benefit programs only "reimbursed physicians for services and procedures that were medically necessary").  For this reason,

11

the Indictment did contain sufficient notice that the government would seek to prove that Dr. Chase made false statements that were material to benefit programs' reimbursement decisions. However, while the Indictment alleges that Dr. Chase's practice is a benefit program, it contains no indication that the statements at issue were directed to Dr. Chase or anyone else in his practice, and it contains no reference to any decisionmaking process in the practice that could conceivably be influenced by his the statements.  Accordingly, the government's attempt to rely on the theory that Dr. Chase's statements were material to himself or others in his practice would be an impermissible constructive amendment of the Indictment and a violation of Dr. Chase's due process rights.

The government also argues for the first time in its motion to reconsider that even though Dr. Chase never sought reimbursement for surgery on behalf of the non-surgical patients, there is evidence that he submitted claims for some of those patients' office visits.  For this reason, it argues, Dr. Chase's statements must be considered material to the reimbursement decisions of the benefit programs that insured those patients.

The government's new argument would appear to violate the rule that a "motion for reconsideration may not present new facts, issues or arguments not previously presented to the court."  Leaver, 358 F. Supp. 2d at 277 n.14.  Even leaving that

12

consideration aside, however, the Court could not accept this latest attempt by the government to revise its theory of materiality. The entire thrust of the Indictment relates to false billing for cataract surgery. It contains no suggestion that Dr. Chase engaged in a scheme to collect reimbursement for medically unnecessary office visits. It gives no indication of what standards benefit programs use to determine whether reimbursement for an office visit is appropriate. It does not even allege that he sought or received reimbursement for any office visits. In short, the Indictment gave Dr. Chase no notice that the government would seek to prove that his statements were material to decisions regarding reimbursement for anything other than cataract surgery. To suggest otherwise at this stage of the case is, once again, a violation of Dr. Chase's rights.

The government cites case law for the proposition that the Indictment need not allege a specific theory of materiality. See, e.g., United States v. Rodriguez, 556 F.2d 638, 641 (2d Cir. 1977) (holding that under the general false statements statute, 18 U.S.C. § 1001, it is unnecessary for an indictment to allege specifically that the defendant's false statements were material); United States v. Olin Corp., 465 F. Supp. 1120, 1132 (W.D.N.Y. 1979) (stating that "[i]t is not necessary that an indictment show conclusively that the statements are material").

However, these cases make clear that while an indictment

13

need not spell out a theory in explicit detail, it must nonetheless allege facts that would support an inference of materiality.  See United States v. McGough, 510 F.2d 598, 602 (5th Cir. 1975) ("If the facts alleged in the indictment warrant an inference that the false statement is material, the indictment is not fatally insufficient for its failure to allege materiality in haec verba."); Olin Corp., 465 F. Supp. at 1132 (holding that "the facts alleged must warrant an inference that the statement is material").  As the discussion above indicates, the Indictment simply fails to allege facts that could warrant an inference of materiality consistent with the theories upon which the government now seeks to rely.

3. Dr. Chase would be prejudiced if the Court reserved decision under Fed. R. Crim. P. 29(b)

The government suggests that the Court should have reserved decision under Fed. R. Crim. P. 29(b), arguing that the jury would not be influenced by the continued presence of the non-surgical counts.  The Court disagrees.  The government seeks, however, to rely on theories of culpability that are at odds with the language in the Indictment.  If the Court were to submit the non-surgical counts to the jury, the jury would receive the mistaken impression that the government's theories had been validly pled, and there is a risk that it would apply those theories to the surgical counts as well.  While it is impossible to predict the precise degree to which the jury's approach to the

surgical counts would be influenced by the Court's failure to dismiss the non-surgical counts, the risk of prejudice to Dr. Chase outweighs the countervailing considerations.  The Court stands by its earlier determination that it should not reserve decision on this matter.

## **CONCLUSION**

For the foregoing reasons, the government's motion to reconsider the Court's order granting in part Dr. Chase's motion for acquittal is DENIED.


Dated at Burlington, Vermont this 30th day of November, 2005.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge